UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CLARA BRANCO,

     Plaintiff,

v.                       Case No:   2:18-cv-633-FtM-NPM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

### OPINION AND ORDER

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum (Doc. 24). In addition, Plaintiff filed a Reply Memorandum on June 25, 2019. (Doc. 27). For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 405(g) of the codified Social Security Act, 42 U.S.C. § 301 *et seq.*

### I.    Social Security Act Eligibility and the ALJ Decision

#### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant

unable to do her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## B. Procedural History

On June 20, 2016, Plaintiff filed applications for a period of disability and disability insurance benefits. (Tr. at 86, 152-55). Plaintiff asserted an onset date of May 30, 2016. (*Id.* at 152). Plaintiff's application was denied initially on September 28, 2016, and on reconsideration on November 10, 2016. (*Id.* at 86, 102). Administrative Law Judge William G. Reamon ("ALJ") held a hearing on July 31, 2017. (*Id.* at 33-71). The ALJ issued an unfavorable decision on January 17, 2018. (*Id.* at 17-27). The ALJ found Plaintiff not to be under a disability from May 30, 2016, through the date of the decision. (*Id.* at 27).

On August 13, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-6). Plaintiff then filed a Complaint (Doc. 1) with this District Court on September 21, 2018, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 13).

## C. Summary of the ALJ's Decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The five-step process determines whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant

work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof and persuasion through step four and then the burden of proof shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2020. (Tr. at 19). At step one of the evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 30, 2016, the alleged onset date. (*Id.*). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "degenerative disc disease with small central lumbar disc herniations at L2-3, L3-4, and L4-5 and with thoracic spine disc herniation at T10-11 and human immunodeficiency virus (HIV) asymptomatic (20 [C.F.R. §] 404.1520(c))." (*Id.* at 19-20). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.* at 22).

At step four, the ALJ determined the following as to Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can occasionally climb ramps and stairs. The claimant can occasionally climb ladders, ropes, and scaffolds. The claimant can occasionally stoop and crouch. The claimant can frequently kneel and crawl. The claimant is to avoid even moderate exposure to vibration. The claimant is to avoid concentrated exposure to hazards.

(*Id.* at 23).

The ALJ found that Plaintiff is capable of performing her past relevant work as (1) a receptionist, DOT # 237.367-038, sedentary exertional level, SVP[1] 4; and (2) an administrative assistant, DOT # 169.167-010, sedentary exertional level, SVP 7, as these jobs were actually and generally performed: (*Id.* at 27).[2] The ALJ concluded that Plaintiff was not under a disability at any time from May 30, 2016, through the date of the decision. (*Id.*).

## II. Analysis

### A. Standard of Review

The scope of this Court's review is limited to whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

When the Commissioner's decision is supported by substantial evidence, the

---

[1] "SVP" refers to Specific Vocational Preparation and indicates the amount of time required for a typical claimant to learn the techniques, acquire the information, and develop the facility needed for average performance in a job. POMS DI § 25001.001 (A) (77).

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.    Issues on Appeal

On appeal, Plaintiff raises the following issues, as stated by the parties:

(1)    Whether the ALJ's assessment of Plaintiff's fibromyalgia is supported by substantial evidence;

(2)    Whether the ALJ's finding that Plaintiff's mental impairments are non-severe and, therefore, cause no work-related limitations, is consistent with the requirements of 20 C.F.R. § 404.1521(a) and supported by substantial evidence;

(3)    Whether the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence, as required by 20 C.F.R. § 404.1529(c); and

(4)    Whether the ALJ's finding that Plaintiff is capable of performing her past relevant work is supported by substantial evidence.

(Doc. 24 at 25, 40, 49, 55).

### C.    Whether the ALJ's Assessment of Plaintiff's Fibromyalgia is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in finding that Plaintiff's fibromyalgia was not a medically determinable impairment, and erred in not accounting for the symptoms associated with this condition when evaluating Plaintiff's RFC. (Doc. 24 at 25). Plaintiff

claims the entirety of the ALJ's analysis of Plaintiff's fibromyalgia is contained in a two-sentence summary, concluding that the required findings for fibromyalgia were not established. (*Id.* at 26 (citing Tr. at 20)). Plaintiff argues the medical records show that on multiple examinations, Plaintiff had numerous tender points that satisfy the fibromyalgia criteria. (*Id.* at 26-27). Further, Plaintiff argues she met all of the 1990 ACR Criteria for fibromyalgia. (*Id.* at 28-30). In addition, Plaintiff claims she met all of the 2010 ACR Criteria as well. (*Id.* at 30-32). Plaintiff then argues the ALJ did not consider any of the limitations reasonably resulting from Plaintiff's fibromyalgia in Plaintiff's RFC assessment, rendering the RFC assessment unsupported by substantial evidence. (Doc. 24 at 34). Finally, Plaintiff argues the ALJ's failure to include limitations related to Plaintiff's fibromyalgia in the RFC rendered the vocational expert's testimony unsupported by substantial evidence. (*Id.*).

The Commissioner asserts that at step two, the ALJ found Plaintiff to have severe impairments and as such, the ALJ properly proceeded to the next step in the evaluation. (Doc. 24 at 34). The Commissioner also argues that even though Plaintiff was diagnosed with fibromyalgia, the existence of an impairment does not reveal the extent to which this impairment limits a plaintiff's ability to do work. (*Id.* at 35). A severe impairment, the Commissioner asserts, is one that significantly limits a plaintiff's physical and/or mental abilities to do basic work activities. (*Id.*). In support, the Commissioner points out the Plaintiff never alleged that her fibromyalgia was a disabling condition, did not include it in her application, and did not identify it as a disabling condition at the administrative hearing. (*Id.*). The Commissioner contends Plaintiff only mentioned fibromyalgia "in passing at the administrative hearing that she had been diagnosed with

fibromyalgia years before her alleged onset and, again, two months before the hearing, but admittedly had not provided any records showing a diagnosis of fibromyalgia for the relevant time." (*Id.*). In addition, the Commissioner argues the ALJ properly considered Social Securing Ruling ("SSR") 12-2p when considering Plaintiff's fibromyalgia and found Plaintiff had not met her burden of proof that the condition is disabling or resulted in greater limitations than the ALJ found in the RFC. (*Id.* at 36); *see also* SSR 12-2p, 2012 WL 3104869 at *2-3 (July 25, 2012). The Commissioner also asserts the ALJ properly considered Plaintiff's medical records related to fibromyalgia, pain symptoms, and associated limitations when reaching his decision. (*Id.* at 36-37). Further, the Commissioner contends the ALJ considered all of Plaintiff's impairments, both severe and non-severe, when determining Plaintiff's RFC and also considered Plaintiff's testimony at the hearing. (*Id.* at 37-38).

In Plaintiff's Reply, Plaintiff argues the ALJ did not mention anywhere in his decision that he did not find fibromyalgia a severe impairment because Plaintiff did not reference it in her application or in her testimony. (Doc. 27 at 1-2). Plaintiff also argues the ALJ was on notice of Plaintiff's fibromyalgia because he addressed it in his decision and there is medical evidence related to fibromyalgia. (*Id.* at 2).

A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. § 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely

medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

Furthermore, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ is only required to consider a claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted).

Here, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease with small central lumbar disc herniations at L2-3, L3-4, and L4-5 and with thoracic spine disc herniation at T10-11 and human immunodeficiency virus (HIV) asymptomatic (20 [C.F.R. § 404.1520(c))." (Tr. at 19-20). Thus, the ALJ found that Plaintiff met the requirements at step two and continued with the sequential evaluation. (*Id.*).

In addition, as long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairments – including her alleged fibromyalgia impairments – any potential error is harmless. *See Griffin*, 560 F. App'x at 841-42. Here, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence

and other evidence, based on the requirements of 20 [C.F.R. §] 404.1529 and SSR 16-3p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 [C.F.R. §] 404.1527." (Tr. at 23). The ALJ also stated that he "has considered all the claimant's medically determinable impairments, severe and non-severe, in the formation of the residual functional capacity findings in this decision." (*Id.* at 21).

Notably, the ALJ considered Plaintiff's fibromyalgia in the decision. The ALJ found: "The claimant had a mild physical musculoskeletal examination with two of 18 tender points, cervical paraspinal spasm left, thoracic right, no active synovitis, and a full range of motion (Ex. 14F/5) with no suggestion of lupus on physical examination (Ex. 14F/6). The required fibromyalgia findings pursuant to SSR 12-2P were not established." (*Id.* at 20). Further, the ALJ reviewed Plaintiff's medical records in the decision, including those related to Plaintiff's fibromyalgia. (*See* Tr. at 23-26). Based on the ALJ's review of the medical records in the decision, the Court finds no error because the ALJ considered all of Plaintiff's impairments, whether severe or non-severe, in combination. Therefore, any potential error by the ALJ is harmless. *See Griffin*, 560 F. App'x at 841-42.

The Court also finds troubling that Plaintiff claims that the ALJ should have considered her fibromyalgia a severe impairment, yet Plaintiff did not include fibromyalgia as a disabling condition in her Application. (Tr. at 180). In addition, even though Plaintiff mentioned her diagnosis of fibromyalgia at the hearing, she did not identify it as a disabling condition. (Tr. at 37-64; 57-59). The Eleventh Circuit has found that the failure to list an impairment in an application and the failure to testify at the hearing that a

plaintiff suffered from this impairment to the extent that it would prevent her from working, is sufficient to dispose of the claim. *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005). The Eleventh Circuit reasoned that an administrative law judge is under no obligation to investigate a claim not presented at the time of the application and not offered at the hearing as a basis for disability. *Id.* (citation omitted). Also, the Eleventh Circuit found persuasive – as in the instant case – that the plaintiff was represented by counsel and, thus, the ALJ had no heightened duty to probe into all relevant facts surrounding the plaintiff's disability. *Id.* (Tr. at 34). In an abundance of caution, however, because the ALJ did consider Plaintiff's fibromyalgia in the decision, the Court will review the ALJ's RFC assessment.

The ALJ considered Plaintiff's impairments in determining Plaintiff's RFC. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a plaintiff's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Plaintiff argues that the ALJ's failure to find fibromyalgia a severe impairment or even a medically determinable impairment, is harmful error because the ALJ did not include any limitations reasonably resulting from fibromyalgia, (for example pain, fatigue, and/or difficulty concentrating) in the RFC assessment, rendering the RFC assessment unsupported by substantial evidence.   (Doc. 24 at 34).   Plaintiff generally states the potential limitations an individual with fibromyalgia may face, but does not state what work-specific limitations she claims she faces that should have been included in the RFC assessment.   Thus, Plaintiff failed to prove that fibromyalgia, whether severe or not severe, would have caused additional limitations in her ability to work or prevent her from performing her past relevant work.

Finally, Plaintiff argues that if additional limitations were added to Plaintiff's RFC, due to fibromyalgia, then the hypothetical to the vocational expert would have included additional limitations and the vocational expert would have found that Plaintiff would not be able to perform work at more than an SVP 2 level.   (Doc. 24 at 34).   An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).   If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."   *Id.*   However, an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record.   *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford*, 363 F.3d at 1161). Here, the ALJ included all of the limitations he found supported by the record in posing a

hypothetical to the vocational expert and, thus, the ALJ did not err in the hypothetical posed to the vocational expert. (Tr. at 66-69).

For the foregoing reasons, the Court finds that the ALJ did not err in failing to find Plaintiff's fibromyalgia a severe impairment and, even if the ALJ erred, the error was harmless because the ALJ found other impairments severe, continued to step three of the sequential evaluation, and considered all of Plaintiff's impairments in determining an RFC. The Court further finds that the ALJ did not err in determining Plaintiff's RFC assessment and did not err in the hypothetical posed to the vocational expert.

**D. Whether the ALJ's Finding that Plaintiff's Mental Impairments are Non-Severe and Cause No Work-Related Limitations is Supported by Substantial Evidence**

Plaintiff argues the ALJ erred in finding Plaintiff's mental impairments not severe. (Doc. 24 at 40). Plaintiff claims the ALJ "selectively relied on only portions of the record; portions which he also mischaracterized," and, therefore, ignored the vast majority of the other evidence of record that established Plaintiff's severe mental impairments. (*Id.*).

The Commissioner argues that at step two of the evaluation, the ALJ found Plaintiff to have severe impairments and proceeded to the next step. (*Id.* at 46). Further, the Commissioner asserts the ALJ considered Plaintiff's mental impairments in the decision. (*Id.*). The Commissioner also argues Plaintiff failed to establish that her mental impairments significantly limited her ability to work. (*Id.*). In addition, the Commissioner contends the ALJ considered all of Plaintiff's impairments whether severe or non-severe in determining Plaintiff's RFC assessment. (*Id.* at 46-47, 49).

The Court applies the same legal standard as it utilized above regarding fibromyalgia. The ALJ found that Plaintiff suffered from specific severe impairments.

(Tr. at 19-20). Thus, the ALJ found that Plaintiff met the requirements at step two and continued with the sequential evaluation. (*Id.*).

So, as long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairments – including her alleged mental impairments – any potential error is harmless. *See Griffin*, 560 F. App'x at 841-42. Here, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §] 404.1529 and SSR 16-3p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 [C.F.R. § 404.1527." (Tr. at 23). The ALJ also stated that he "has considered all the claimant's medically determinable impairments, severe and non-severe, in the formation of the residual functional capacity findings in this decision." (*Id.* at 21).

In addition, the ALJ thoroughly considered the four broad areas of mental functioning in evaluating Plaintiff's mental impairments, finding Plaintiff had mild limitations in all areas. (Tr. at 21 -22). Further, the ALJ discussed David Clay, Ph.D.'s opinion as a reviewing psychologist, Lori Chang, Psy.D.'s opinions as a psychological consultative examiner, and Wendy Silver, Psy.D.'s opinion as a reviewing psychologist. (*Id.* at 25-26). Based on the ALJ's review of the medical records, the Court finds no error because the ALJ considered all of Plaintiff's impairments in combination, whether severe or non-severe, including Plaintiff's mental impairments. Therefore, any potential error by the ALJ is harmless. *See Griffin*, 560 F. App'x at 841-42.

Plaintiff also argues the ALJ's failure to find her mental impairments severe is harmful error because the ALJ did not include any limitations reasonably resulting from

her mental impairments in the RFC assessment, rendering the RFC assessment unsupported by substantial evidence. (Doc. 24 at 45). Plaintiff states generally that "the medical evidence shows that Plaintiff has ongoing psychological impairments that significantly interfere with her ability to function in the workplace," but does not state with any specificity exactly what work limitations should have been included in the RFC. (Doc. 24 at 45). Thus, Plaintiff failed to show specific limitations from her mental impairments, whether severe or not severe, which would have caused additional limitations in her ability to work.

Finally, Plaintiff again argues that if additional limitations were added to Plaintiff's RFC, due to Plaintiff's mental impairments, then the hypothetical to the vocational expert would have contained additional limitations and the vocational expert would have found Plaintiff unable to perform work at more than an SVP 2 level. (*Id.* at 45). For the same reasons as stated above, the Court finds that the ALJ included all of the limitations he found supported by the record in posing a hypothetical to the vocational expert and, thus, the ALJ did not err in the hypothetical posed to the vocational expert.

For the foregoing reasons, the Court finds the ALJ did not err in failing to find Plaintiff's mental impairments severe and, even if the ALJ erred, the error was harmless because the ALJ found other impairments severe, continued to step three of the sequential evaluation, and considered all of Plaintiff's impairments in determining an RFC. The Court further finds that the ALJ did not err in determining Plaintiff's RFC assessment and did not err in the hypothetical posed to the vocational expert.

### E.     Whether the ALJ's Assessment of Plaintiff's Subjective Testimony is Supported by Substantial Evidence

Plaintiff argues that the ALJ mischaracterized Plaintiff's testimony as to the reasons why she stopped working.  (Doc. 24 at 50-51).   Plaintiff also argues that the ALJ cited to only selective portions of the record to discredit Plaintiff's pain complaints.  (*Id.* at 51).   Plaintiff claims that her treating physicians at Pain Management Specialists "explained that Plaintiff's history, physical examination, and imaging studies were congruent with her reported pain (Tr. 480, 485)."  (*Id.* at 51).   Plaintiff further argues that the ALJ ignored significant objective evidence and erroneously suggested that Plaintiff's ability to perform mundane and routine daily tasks indicated an ability to perform full-time work activity at the light exertional level.   (*Id.* at 52).

The Commissioner argues that the ALJ properly considered Plaintiff's subjective statements along with the other evidence in reaching an RFC finding.  (*Id.*).   The Commissioner contends that the ALJ listed several factors to support his findings.  (*Id.* at 53).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy the following two-part test:   "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."   *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).   After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence.

*Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).

If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).[3]

Here, the ALJ set forth the requirements of SSR 16-3p. (Tr. at 23-24 (citing SSR 16-3p, 2016 WL 1119029 (March 16, 2016)). In addition, the ALJ found:

> The undersigned gives mild weight to the allegations and testimony of the claimant. The allegations and testimony are inconsistent with the medical record evidence. The claimant reported doing well to medical providers at a number of visits. The claimant terminated work for reasons other than physical or mental incapacity. The claimant left her job in New Jersey and moved to Florida. The claimant testified her disabled husband does most of the driving and household chores.

> In sum, the above residual functional capacity assessment is supported by the opinions of the state agency physician Dr. Meade. The opinions of Dr. Meade are supported by the findings of Dr. Kibria on examination at the consultative examination. The laboratory diagnostic testing including x-rays and MRIs from November 2016 demonstrate mild findings, which support the opinions of Dr. Meade and Dr. Kibria. The opinions of Dr. Silver support the findings that the mental impairments are non-severe.

---

[3] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 16-3p explains that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* The Commissioner republished SSR 16-3p in October 2017. 82 Fed. Reg., 49,462 (Oct. 25, 2017).

(Tr. at 26).   The ALJ also found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."   (*Id.* at 25).

Plaintiff argues that the ALJ found Plaintiff's reason for quitting her job "was simply because she moved from New Jersey to Florida in May 2016 and did so 'for reasons other than physical or mental incapacity.'"   (Doc. 24 at 50 (citing Tr. at 25-26)).   Plaintiff claims that she testified she stopped working for several reasons, including moving to a warmer climate for her health.   (*Id.*).   Plaintiff also argues she testified that she was having difficulties with her job duties because of back pain and depression.   (*Id.*).   And Plaintiff claims the ALJ mischaracterized the evidence.   (*Id.*).

The ALJ supported his finding of giving mild weight to Plaintiff's subjective statements by finding she left her work in New Jersey for reasons other than physical or mental incapacity.   (Tr. at 26).   At the hearing, Plaintiff's attorney asked Plaintiff to explain the circumstances as to why she stopped working.   (*Id.* at 41).   Plaintiff testified that "I left, the reason why we moved to Florida was various reasons.   But one of the main reasons was really to see if the climate was better on my health.   Because we lived in New Jersey where it's cold a lot of the months and snow and it was very hard."   (*Id.*).   Plaintiff further testified that it was getting harder to carry out her job duties, specifically due to back pain and depression because the job required her to go to the warehouse and carry five-gallon pails full of paint to fulfill customers' orders.   (*Id.* at 41-42).   After review of Plaintiff's testimony, the Court finds that the ALJ did not mischaracterize the

testimony. Plaintiff testified that she left her job for many reasons, with the main reason being that she hoped a warmer climate was better for her health. (*Id.* at 41). She did not testify that she left her job due to physical or mental incapacity. (*Id.*). The Court finds the ALJ correctly summarized Plaintiff's testimony.

Plaintiff also argues that the ALJ cited to only selective portions of the record to discredit Plaintiff's pain complaints. (Doc. 24 at 51). The ALJ reviewed and summarized the medical records. (Tr. at 24-26). The ALJ relied on the consultative examination by Eshan M. Kibria, D.O. to support his findings. (Tr. at 25). On September 27, 2016, Dr. Kibria conducted an independent medical examination. (Tr. at 381-85). Plaintiff complained of a history of pain in the left lower back into the left buttock and stated that she can do everything, but must do it slowly. (*Id.* at 381). Dr. Kibria reviewed Plaintiff's prior medical records. (*Id.*). Dr. Kibria found Plaintiff's back to be tender to palpation on the left, "buttock and PSIS." (*Id.* at 382). He also found passive pain-free lumbar range of motion that was moderately limited in extension, slightly limited in tilting left, and slightly limited in tilting right. (*Id.*). Dr. Kibria noted that Plaintiff's single leg raises were pain free up to 90 degrees bilaterally in a sitting position. (*Id.*). Dr. Kibria's impression diagnosis included depression, pain in knees, pain in left lower back into left buttock, and occasional memory lapses. (*Id.*).

In addition, the ALJ relied on state agency review physician Larry Meade, D.O. (*Id.* at 26). Dr. Meade reviewed the medical records in evidence and found :

> The symptoms, in my judgment, appear to be partially consistent and attributable to the medically determinable impairment (s) that causes some limitation of residual function. The severity of the symptoms and the alleged effect on function is not entirely consistent with the total medical and non[-]medical evidence, including statements by the claimant and others, observations regarding activities of daily living, and alternations of usual

behavior or habits. There are some allegations and symptoms that appear in my judgment, to be disproportionate to the expected severity and duration that would be expected on basis of the claimant's medically determinable impairments. The RFC is therefore reduced accordingly to reflect the work capacity and remains with appropriate restrictions to compensate for the impairments and associated symptoms that can be medically determined.

(*Id.* at 95). The ALJ's RFC findings mirror those of Dr. Meade's limitations findings. (*Compare id.* at 96-97, *with id.* at 23).

Thus, ALJ supported his decision by relying on Dr. Kibria's and Dr. Meade's opinions. (*Id.* at 25). The ALJ noted that Dr. Kibria found pain in the left lower back into the left buttock only, with passive pain free lumbar range of motion, with moderate limitations in extension and slightly limited in tilting left and right. (*Id.*). In addition, the ALJ noted that Dr. Meade supported his findings by relying on Dr. Kibria's opinion and both opinions are supported by the x-rays and MRIs from November 2016. (*Id.*).

Finally, Plaintiff claims that her treating physicians at Pain Management Specialists found Plaintiff's history, physical examination, and imaging studies to be congruent with her reported pain. (Doc. 24 at 51). Indeed, these records do show that Plaintiff's history, physical examination, and imaging studies are congruent with Plaintiff's reported pain. (Tr. at 480). But these records also show that with current medications, Plaintiff's quality of life and ability to perform activities of daily living are greatly improved. (*Id.*).

The Court finds that the ALJ thoroughly considered all of the evidence of record in reaching his decision. (*Id.* at 20-26). The ALJ provided clearly articulated reasons supported by substantial evidence of record to afford mild weight to the allegations and testimony of Plaintiff. The ALJ cited to many treatment records to support his conclusions. Thus, the Court finds that substantial evidence supports the ALJ's findings to afford mild weight to Plaintiff's subjective statements.

**F.     Whether the ALJ's Finding that Plaintiff is Capable of Performing Her Past Relevant Work is Supported by Substantial Evidence**

Plaintiff argues that the ALJ erred in relying on the vocational expert's testimony, which was inconsistent with the *Dictionary of Occupational Titles* ("DOT"). (Doc. 24 at 55). Plaintiff claims that there is an apparent conflict between Plaintiff's past relevant work duties and their classification as sedentary work because she was required to lift 5-gallon pails containing paint. (*Id.* at 56). In addition, Plaintiff argues that she had to take half days off because of her back pain and therefore her work fell short of sustained work on a regular and continuing basis. (*Id.*).

The Commissioner argues that the vocational expert's testimony constitutes substantial evidence in support of the ALJ's decision at step four of the sequential evaluation that Plaintiff could perform her past work as a receptionist or administrative assistant. (*Id.* at 57). The Commissioner asserts that the ALJ limited Plaintiff to light work, and the jobs of receptionist and administrative assistant are classified as sedentary work. (*Id.* at 58). The Commissioner argues Plaintiff testified that only the administrative assistant job required her to lift five-gallon pails and caused her to take a half day off every other week to recover. (*Id.*).

"[T]he ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). Thus, an ALJ must ask the vocational expert whether a conflict between his or her testimony and the DOT exists and must ask for an explanation if there appears to be a conflict. *Id.* at 1363. Moreover, whenever a conflict is apparent, the ALJ is required to ask the vocational expert about it. *Id.* An apparent conflict is a

"conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* at 1365. "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363. This is an independent obligation of the hearing examiner. *Id.*

As to Plaintiff's past relevant work, from her testimony, it appears that she was a receptionist at a chemical company and various other companies. (Tr. at 38). Plaintiff was responsible for answering phones, scanning files, filing paperwork, using a computer, copying, faxing, printing documents, delivering incoming mail, and outgoing mail. (*Id.*). Plaintiff also worked as an administrative assistant. (*Id.*). She would take orders, order oil, schedule pickups for new materials, call agents, arrange workers to be present when shipments arrived, handle billing, and post checks. (*Id.* at 38-39). When orders would come in, Plaintiff would go to the warehouse, carry five-gallon pails of paint, and verify the order. (*Id.*).

The vocational expert classified Plaintiff's past relevant work as a receptionist and an administrative assistant. (*Id.* at 66-67). The ALJ found Plaintiff able to perform her past relevant work as she actually performed it and also as it is generally performed. (*Id.* at 27). Plaintiff's testimony as to her duties as a receptionist did not include any mention of lifting 5-gallon pails, and there is no dispute that Plaintiff's prior receptionist jobs were performed at a sedentary level. Thus, even if the ALJ erred in finding Plaintiff capable of performing her past relevant work as an administrative assistant as she actually

performed it, this error is harmless because the ALJ also found Plaintiff capable of performing her past relevant work—both as a receptionist and as an administrative assistant—as generally performed. Therefore, the Court finds that the ALJ's decision is supported by substantial evidence in finding Plaintiff capable of performing her past relevant work.

## III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and that there was either no error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, it is hereby **ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 23, 2020.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties